Anthony Anscombe (Bar No.135883)
anthony.anscombe@sedgwicklaw.com
david M. Poell (Pro Hac Vice)
david.poell@sedgwicklaw.com
SEDGWICK LLP
One North Wacker Drive, Suite 4200
Chicago, IL  60606-2841
Telephone:   312.641.9050
Facsimile:    312.641.9530

Karen Woodward (Bar No.205543)
karen.woodward@sedgwicklaw.com
Alison Andre (Bar No. 251689)
alison.andre@sedgwicklaw.com
SEDGWICK LLP
801 South Figueroa Street, 19th Floor
Los Angeles, CA  90017-5556
Telephone:  213.426.6900
Facsimile:   213.426.6921

*Attorneys for Defendant
Mead Johnson & Company, LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| SHENIQUE ROUTE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MEAD JOHNSON NUTRITION COMPANY d/b/a MEAD JOHNSON & COMPANY, LLC<br><br>Defendant. | Case No. CV 12-07350-GW-JEM<br><br>**DEFENDANT MEAD JOHNSON & COMPANY, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE**<br><br>Date:     February 21, 2013<br>Time:    8:30 a.m.<br>Ctrm:    10<br>Judge:   Hon. George Wu |

1

CH/427401v1

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................5

RELEVANT FACTS.............................................................................................5

ARGUMENT.........................................................................................................7

I. This Court May Strike Improper Class Allegations..............................7

II. This Court Should Strike All Allegations By Which Plaintiff Seeks to Represent a Nationwide Class .................................................8

    A. Controlling Ninth Circuit Precedent Forecloses the Certification of a Nationwide Class Where Variances in State Law Overwhelm Common Issues of Fact.........................................8

    B. Mazza Compels That This Court Strike Plaintiff's Nationwide Class Claims For Breach of Warranty ..........................................11

III. This Court Should Strike All Allegations by Which Plaintiff Seeks to Represent Purchasers of Products that She, Herself, Did Not Buy ..................................................................................................14

CONCLUSION....................................................................................................18

CH/427401v1

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .................................................................................................... 11

*Carijano v. Occidental Petroleum Corp.*,
643 F.3d 1216 (9th Cir. 2011) ....................................................................................... 9

*Castano v. Am. Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) ................................................................................... 10, 12

*Cole v. General Motors*,
484 F.3d 717 (5th Cir. 2007) ....................................................................................... 12

*Fantasy v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993) ....................................................................................... 7

*Gen. Tel. of the Sw. v. Falcon*,
457 U.S. 147 (1982) ...................................................................................................... 7

*Georgine v. Amchem Prods., Inc.*,
83 F.3d 610 (3d Cir. 1996) .......................................................................................... 11

*Gianino v. Alacer Corp.*,
846 F. Supp. 2d 1096 (C.D. Cal. 2012) ....................................................................... 11

*Gonzalez v. Proctor & Gamble Co.*,
247 F.R.D. 616 (S.D. Cal. 2007) ................................................................................. 15

*Graphics Processing Units Antitrust Litig.*,
253 F.R.D. 478 (N.D. Cal. 2008) ................................................................................ 16

*Guido v. L'Oreal, USA, Inc.*,
2012 WL 2458118, at *1 (C.D. Cal. June 25, 2012) ................................................... 15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ..................................................................................... 15

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ....................................................................................... 15

*Highway Sales, Inc. v. Blue Bird Corp.*,
559 F.3d 782 (8th Cir. 2009) ....................................................................................... 12

*In re Bridgestone/Firestone, Inc.*,
288 F.3d 1012 (7th Cir. 2002) ............................................................................... 10, 12

*In re Grand Theft Auto Video Game*,
251 F.R.D. 139 (S.D.N.Y. 2008) ................................................................................. 11

*In re Yasmin & Yaz (Drospirenone) Mktg.*,
275 F.R.D. 270, 274 (S.D. Ill. 2011) ............................................................................. 8

*Kaczmarek v. Int'l Bus. Machs. Corp.*,
186 F.R.D. 307 (S.D.N.Y. 1999) ................................................................................. 15

*Kowalsky v. Hewlett-Packard Co.*,
No. 10-cv-2176, 2012 WL 892427, at *7 (N.D. Cal. Mar. 14, 2012) ......................... 11

*Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*,
211 F.R.D. 228 (S.D.N.Y. 2002) ................................................................................. 15

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Mazza v. American Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ................................................................... passim

*Mazza*, ............................................................................................................. 11

*McCann v. Foster Wheeler LLC*,
  48 Cal. 4th 68 (2010) .................................................................................. 10, 14

*Pilgrim v. Universal Health Card, LLC*,
  660 F.3d 943 (6th Cir. 2011) ........................................................................ 8, 10

*Ralston v. Mortg. Inv. Group, Inc.*,
  No. 08-cv-536, 2012 WL 1094633, at *3 (N.D. Cal. Mar. 30, 2012) ................. 11

*Red v. Kraft Foods, Inc.*,
  2011 WL 4599833 (C.D. Cal. Sept. 29, 2011) ..................................................... 16

*Rikos v. Procter & Gamble Co.*,
  No. 11-cv-226, 2012 WL 641946, at *5 (S.D. Ohio Feb. 28, 2012) ............... 8, 13

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ................................................................................... 15

*Walsh v. Ford Motor Co.*,
  807 F.2d 1000 (D.C. Cir. 1986) ..................................................................... 12

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) ............................................................................ 7

*Wiener v. Dannon Co.*,
  255 F.R.D. 658 (C.D. Cal. 2009) ................................................................ 15, 16

**Statutes and Rules**

CAL. BUS. & PROF. CODE § 17200 ........................................................................ 9
CAL. BUS. & PROF. CODE § 17500 ........................................................................ 9
CAL. CIV. CODE § 1750 ......................................................................................... 9
FRCP, Rule 12(b)(6) ....................................................................................... 5, 11
FRCP, Rule 12(f) .................................................................................................. 5
FRCP, Rule 23 ............................................................................................. passim
FRCP, Rule 23(a)(2) ........................................................................................... 14
FRCP, Rule 23(a)(3) ........................................................................................... 15
FRCP, Rule 23(b)(3) ........................................................................................... 10
FRCP, Rule 23(d)(1)(D) .................................................................................... 5, 7

**Other Authorities**

18 WILLISTON ON CONTRACTS §§ 52:45, 52:67 (4th ed. 2012) ............................. 12

## INTRODUCTION

Proceeding from her alleged purchase of Enfamil® Premium® Infant formula in Los Angeles in November 2011, Shenique Routé wants to represent:

1) A nationwide class of purchasers over whose claims California law will not apply;

2) In relation to a number of products which she never bought.

Pursuant to Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D), Mead Johnson & Company, LLC ("Mead Johnson") moves this Court to strike from the First Amended Complaint ("FAC"):

1) All allegations by which Plaintiff purports to represent a nationwide class; and

2) All allegations relating products which Plaintiff did not purchase.

## RELEVANT FACTS

Mead Johnson's 12(b)(6) motion describes Plaintiff's allegations and claims for relief. Mead Johnson recites only those allegations pertinent to this motion to strike.

*Allegations Relevant to Class Definition*: In relation to her claims for breach of warranty, Plaintiff seeks to represent a nationwide class, which she defines as "all persons in the United States who purchased the Mislabeled Products for personal or household use, and not for resale or distribution." (FAC ¶ 33.)[1] The FAC alleges that Plaintiff is a resident of the State of California and purchased the formula in California from a Target store. (FAC ¶ 16.) The FAC alleges that Mead Johnson & Company, LLC is a Delaware LLC, with its principal place of business in Glenview, Illinois. (FAC ¶ 18.) The FAC makes no allegation that Mead Johnson manufactured the product in California, developed product advertising in California, or that any other relevant conduct occurred in California except the sale of formula to Ms. Routé.

---

[1] She also purports to represent a subclass of California purchasers with respect to these counts. (FAC ¶ 34.)

5

*Allegations Relevant to Products that Shenique Routé did not buy or use:* Plaintiff purports to have purchased a single Mead Johnson product, Enfamil Premium® Infant. (FAC ¶ 16.) She also purports to represent absent class members who purchased three other products, which she does not claim to have purchased herself: Enfamil A.R.®, Enfamil Premium Newborn, and Enfagrow® Older Toddler Vanilla Milk Drink. (FAC ¶ 1.) She has appended labels for three of these products to her FAC as Exhibit A.

This product labeling shows important differences between these products. Enfamil Premium Infant's label states that the product is a milk-based formula for babies 0-12 months. It states that it has "Natural Defense™ Dual Prebiotics for digestive health." It also states: "Experts agree on the many benefits of breast milk. If you chose to use infant formula, ask your baby's doctor about Enfamil Infant." It elsewhere states: "Use as directed by your baby's doctor."

Enfamil A.R.'s label states that the product is thickened with added rice starch for babies 0-12 months who spit up frequently. (FAC at Ex. A.) It says little about Natural Defense Dual Prebiotic Blend, except that it is "for digestive health." It does state that the product is clinically proven to reduce frequent spit up, and indicates that this claim is based on "a clinical study of Enfamil A.R. infant formula before the addition of DHA, ARA and prebiotics with infants who spit up frequently (5 or more spit ups per day.)" It states: "Experts agree on the many benefits of breast milk. If you chose to use infant formula, ask your baby's doctor about Enfamil A.R." It later states: "Ask your baby's doctor which formula is appropriate for your baby."

Enfagrow Older Toddler Vanilla Milk Drink is labeled for children 1 year and older. It is a vanilla milk drink "tailored to meet your child's changing nutritional needs." It makes no mention of the benefits of breast milk, or about seeking the advice the infant's doctor. The label states that it has 22 nutrients to support growth; DHA to help support brain and eye development; and antioxidants

6

and other nutrients to help support the immune system. (FAC at Ex A.) It states that it has "Natural Defense Dual Prebiotics Blend, designed to help support digestive health."

Plaintiff has not appended a label for Enfamil Premium Newborn. She has alleged nothing about her baby or about any consultations with her baby's doctor regarding the use of infant formula. She does not claim to have reviewed labels for any product other than Enfamil Premium Infant.

## ARGUMENT
### I. THIS COURT MAY STRIKE IMPROPER CLASS ALLEGATIONS

The Supreme Court has recognized that sometimes the impossibility of class certification will be apparent on the face of the complaint. *Gen. Tel. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982). So it is here, where Plaintiff seeks certification of a nationwide class over which the laws of all fifty states will apply, and where Plaintiff seeks to represent absent class members in relation to products she never purchased.

Mead Johnson brings the motion pursuant to Fed. R. Civ. P. 12(f), which permits the Court to strike from the FAC any "immaterial, impertinent or scandalous matter." It also brings the motion pursuant to Fed. R. Civ. P. 23(d)(1)(D), which permits the Court to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." The Ninth Circuit has observed that the purpose of Rule 12(f) is to avoid "the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). That purpose will be served here, where dispensing with frivolous class allegations will streamline discovery in the event that this case lasts beyond the pleading stage.

7

Indeed, the Sixth Circuit has recently noted that the pleading stage is not a premature juncture at which to address class allegations that have no chance of success. In *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011), the Sixth Circuit affirmed the district court's order granting a motion to strike plaintiff's nationwide class allegations. Essential to the Court's ruling was the determination that plaintiffs "do not explain what type of discovery or what type of factual development would alter the central defect in this class claim." *Id.* at 949. The Sixth Circuit found this "key reality" dispositive: "Their claims are governed by different States' laws, a largely legal determination, and no proffered or potential factual development offers any hope of altering that conclusion, one that generally will preclude class certification." *Id.*; *see also Rikos v. Procter & Gamble Co.*, No. 11-cv-226, 2012 WL 641946, at *5 (S.D. Ohio Feb. 28, 2012) ("While it is true that discovery may define the class more precisely, the fact remains that a nationwide class consisting of all purchasers of Align will inevitably include non-California residents who purchased the product outside of California."); *In re Yasmin & Yaz (Drospirenone) Mktg.*, 275 F.R.D. 270, 274 (S.D. Ill. 2011) (granting motion to strike class allegations after concluding that "defendants have identified numerous facial deficiencies in the class allegations" and that "no amount of time or discovery can cure these deficiencies").

## II. THIS COURT SHOULD STRIKE ALL ALLEGATIONS BY WHICH PLAINTIFF SEEKS TO REPRESENT A NATIONWIDE CLASS

### A. Controlling Ninth Circuit Precedent Forecloses the Certification of a Nationwide Class Where Variances in State Law Overwhelm Common Issues of Fact

Earlier this year, the Ninth Circuit held that putative nationwide class actions asserting consumer protection claims should not be certified under Rule 23. In *Mazza v. American Honda Motor Co.*, the class plaintiffs sought to certify a nationwide class based on allegations that Honda concealed material information

8

in connection with its marketing and sales of Acura vehicles equipped with a particular breaking system. *See* 666 F.3d 581, 585–87 (9th Cir. 2012). Plaintiffs had brought claims under California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200 *et seq.*, False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE § 17500 *et seq.*, and the Consumers Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1750 *et seq.*, and a claim for unjust enrichment. *Id.* at 587. Honda had its principal place of business in California, and conceived its marketing plan in California. Therefore, the trial court concluded that California law could supply a uniform rule of decision for a nationwide class, as California had the most significant governmental interest in application of its law.

On appeal from the district court's certification of a nationwide class, the Ninth Circuit reversed, concluding that "the district court abused its discretion in certifying a class under California law that contained class members who purchased or leased their car in different jurisdictions with materially different consumer protection laws." *Id.* at 590. In reaching this decision, the *Mazza* Court applied a three-part test to determine choice of law for the nationwide class, which required the Court to do the following: (1) determine if the laws of other states "materially differ" from California law; (2) if the laws materially differ, determine each state's respective interest in application of its law; and (3) if the laws materially differ and both states have an interest in the litigation, apply the law of the state whose interest would be "more impaired" if its law were not applied. *Id.* at 590–94; *see also Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1233 (9th Cir. 2011).

To demonstrate materiality, Honda detailed the ways in which California law differs from the laws of the 43 other jurisdictions in which class members resided, finding that consumer protection statutes in various states differed from one another with respect to scienter and reliance requirements. *See* 666 F.3d at 591. There were also material differences in the available remedies across states.

9

*Id.* Next, the Court analyzed whether foreign jurisdictions had a compelling interest in applying their own consumer protection laws, and held that they did. *Id.* at 592 ("Each of our states also has an interest in 'being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and business in the event they are faced with litigation in the future.'" (quoting *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 97–98 (2010))). Finally, the Court held that "[t]hese foreign states have a strong interest in the application of their laws to transactions between their citizens and corporations doing business within their state," while "California's interest in applying its law to residents of foreign states is attenuated." *Id.* at 594. Critical to this final holding was the fact that "the last events necessary for liability as to the foreign class members—*communication of the advertisements* to the claimants and their reliance thereon in purchasing the vehicles—took place in the various foreign states, not in California." *Id.* (emphasis added). Thus, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.* at 594.

Consequently, the *Mazza* Court concluded that "variances in state law overwhelm[ed] common issues and preclude[d] predominance for a single nationwide class." *Id.* at 597. Hence, the Court held that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.* at 594.

The Ninth Circuit's holding in *Mazza* is consistent with decisions in other Circuits which have held that class actions implicating variations in state law are not certifiable on a nationwide basis due to lack of predominance under FRCP 23(b)(3). *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946–49 (6th Cir. 2011); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015–18 (7th Cir. 2002); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996); *Georgine v.*

10

*Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *In re Grand Theft Auto Video Game*, 251 F.R.D. 139, 147 (S.D.N.Y. 2008).

In the wake of *Mazza*, California district courts have repeatedly recognized that plaintiffs cannot obtain certification of nationwide classes under California law. *See, e.g.*, *Schwartz v. Lights of America*, 2012 WL 4497398, at *8 (C.D. Cal. Aug. 31, 2012) ("After *Mazza*, if a material conflict of law exists, it is difficult to imagine a false advertisement claim where a court could apply California law to a nationwide class."); *Ralston v. Mortg. Inv. Group, Inc.*, No. 08-cv-536, 2012 WL 1094633, at *3 (N.D. Cal. Mar. 30, 2012) ("In light of the Ninth Circuit's recent decision in [*Mazza*], the Court concludes that the class [asserting claims under the UCL] must be limited to California residents."); *Kowalsky v. Hewlett-Packard Co.*, No. 10-cv-2176, 2012 WL 892427, at *7 (N.D. Cal. Mar. 14, 2012) ("Plaintiff offers no argument, other than asserting that *Mazza* was wrongly decided, to circumvent *Mazza*'s holding, which precludes the certification of a nationwide class asserting claims under the UCL and the CLRA."); *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1103 (C.D. Cal. 2012) (denying certification of nationwide class asserting UCL, FAL, and CLRA claims because "every state would be impaired in its ability to protect the consumers within its borders if California law were applied to all claims of the nationwide class").

### B. *Mazza* Compels That This Court Strike Plaintiff's Nationwide Class Claims For Breach of Warranty

Presumably in recognition of *Mazza*'s application to her claims under the CLRA, UCL, and FAL, Plaintiff has confined the putative nationwide class to her claims for breach of warranty. However, even if these claims survive Mead Johnson's 12(b)(6) motion to dismiss, there is no reason why the choice of law analysis would be any different for these counts.

11

As an initial matter, it is well established that states have different rules that apply to breach of warranty. Moreover, it is the *plaintiff's* burden to demonstrate that variations in state law do not predominate over common issues of fact. *See, e.g.*, *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741–42 (5th Cir. 1996). For example, in *Cole v. General Motors*, 484 F.3d 717, 725–26 (5th Cir. 2007), the Fifth Circuit held that numerous differences in express warranty laws of the fifty states precluded a finding of predominance. Specifically, the *Cole* Court concluded that "plaintiffs did not sufficiently demonstrate the [Rule 23(b)] predominance requirement because they failed both to undertake the required extensive analysis of variations in state law concerning their claims and to consider how those variations impact predominance." *Id.* at 725. Other Circuits have likewise reached the same conclusion in the class action context, with respect to the variability of express and implied warranty laws across jurisdictions. *See also Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016–17 (D.C. Cir. 1986) (vacating certification and remanding for determination on whether state law warranty differences precluded finding of predominance); *Highway Sales, Inc. v. Blue Bird Corp.*, 559 F.3d 782, 795 n.13 (8th Cir. 2009) (Beam, J., concurring in part and dissenting in part) (noting that some states require privity as an element of warranty claims, while others do not); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017–19 (7th Cir. 2002) (explaining differences in state warranty laws across the 50 states and reversing certification of nationwide class on the grounds that such class was unmanageable); 18 WILLISTON ON CONTRACTS §§ 52:45, 52:67 (4th ed. 2012) (indexing differences in elements of express warranty laws across jurisdictions).

The same conclusions that led the *Mazza* Court to reject certification of a nationwide class apply with even greater force in this case. The State of California has no connection to this case at all, other than its interest in product sales to its own residents. Other states have an equal interest that in seeing that their own

12

state laws apply to the claims of their residents, which would be impaired by the application of California law. Meanwhile, the application of the laws of other states to their own residents will in no way hinder California's interests.

In a recent case with facts very similar to the instant controversy, the Southern District of Ohio—applying California's three-part choice-of-law framework—granted a motion to strike plaintiff's breach of warranty claims on behalf of a nationwide class "because a choice of law analysis demonstrates that individual questions of law predominate." *Rikos v. Procter & Gamble Co.*, No. 11-cv-226, 2012 WL 641946, at *5 (S.D. Ohio Feb. 28, 2012). The plaintiff brought claims for violations of the CLRA, UCL, and for breach of express warranty, based on P&G's national marketing of a product called "Align," which advertised the product as containing probiotics and providing "great digestion through science." *Id.* at *1. Plaintiff sought to certify a nationwide class, and P&G moved to strike the class allegations.

In granting the motion to strike, the *Rikos* Court's analysis closely tracked that of *Mazza*. First, the *Rikos* Court found at least four material differences between California's warranty laws and the warranty laws of other states: (1) California provides an exception to the privity requirement for purchases where the plaintiff relied on the product's labels or advertisements, while other states bar claims for breach of express warranty in the absence of privity and a third category have no privity requirement at all; (2) California holds that statements of mere "puffery" do not constitute an express warranty, while other states hold that a warranty is created when the natural tendency of the statement is to induce a purchase; (3) California does not require reliance as an element of a breach of warranty claim, while some states require reliance, others apply a burden-shifting method, and still others presume reliance; and (4) California requires plaintiffs in express warranty actions to give notice to the manufacturer, while other states require notice only to the seller, and some do not require notice at all. *Id.* Second,

13

1   the Court held that "[a]llowing each state to apply its own laws 'assure[s]
2   individuals and commercial entities operating within its territory that applicable
3   limitations on liability set forth in the jurisdiction's law will be available to those
4   individuals and businesses in the event they are faced with litigation in the
5   future.'" *Id.* at *6 (quoting *McCann*, 48 Cal. 4th at 91). Finally, as in *Mazza*, the
6   *Rikos* Court held that "[i]n a consumer products case, the last events necessary for
7   liability are communication of the advertisements to the claimants and their
8   purchase of the products," and accordingly, "the states where [the product] was
9   purchased have the predominant interest in the application of their laws to
10  transactions between their citizens and Procter & Gamble." *Id.* Therefore, the
11  *Rikos* Court struck plaintiff's nationwide class allegations, on the grounds that
12  "individual questions of law predominate Plaintiff's claims." *Id.* at *7.

13  In sum, breach of warranty laws are anything but uniform; rather, the
14  elements necessary to state a claim under such laws vary significantly. Thus,
15  Routé's nationwide class definition should be stricken.

16  **III.  THIS COURT SHOULD STRIKE ALL ALLEGATIONS BY WHICH
17       PLAINTIFF SEEKS TO REPRESENT PURCHASERS OF
18       PRODUCTS THAT SHE, HERSELF, DID NOT BUY**

19  Plaintiff has not alleged that she ever purchased Enfamil A.R.®, Enfamil
20  Premium Newborn, and Enfagrow® Premium Older Toddler Vanilla Milk Drink.
21  Consequently, her claims are neither common nor typical of class members, nor
22  can she adequately represent persons who purchased these three products.

23  Rule 23(a)(2) requires plaintiff to show that "there are questions of law or
24  fact common to the class." Fed. R. Civ. P. 23(a)(2). In *Dukes*, the Supreme Court
25  instructed that, in order to satisfy the commonality requirement, plaintiffs must
26  demonstrate that their claims "depend upon a common contention" that is "capable
27  of classwide resolution—which means that determination of its truth or falsity will
28

CH/427401v1

1 resolve an issue that is central to the validity of each one of the claims in one
2 stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

3       Similarly, under Ninth Circuit law, to satisfy the typicality requirement of
4 Rule 23(a)(3) that "the claims or defenses of the representative parties are typical
5 of the claims or defenses of the class," the plaintiff's claims must be "reasonably
6 coextensive with those of absent class members." *Guido v. L'Oreal, USA, Inc.*,
7 2012 WL 2458118, at *1 (C.D. Cal. June 25, 2012) (quoting *Hanlon v. Chrysler
8 Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). The test for typicality is "whether
9 other members have the same or similar injury, whether the action is based on
10 conduct which is not unique to the named plaintiffs, and whether other class
11 members have been injured by the same course of conduct." *Wiener v. Dannon
12 Co.*, 255 F.R.D. 658, 665 (C.D. Cal. 2009) (quoting *Hanon v. Dataproducts Corp.*,
13 976 F.2d 497, 508 (9th Cir. 1992)).

14       In cases involving a variety of products, courts, emphasizing that different
15 products have different functions and different consumers, have held that a named
16 plaintiff that purchased a different product than that purchased by unnamed
17 plaintiffs fails to satisfy the typicality requirement of Rule 23(a)(3). *See, e.g.*,
18 *Wiener*, 255 F.R.D. at 665; *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616
19 (S.D. Cal. 2007) (finding that named plaintiff did not satisfy the Rule 23(a)(3)
20 typicality requirement where product plaintiff purchased was not one of the 28
21 products subject to allegedly false hair strengthening claims); *Lewis Tree Serv.,
22 Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228 (S.D.N.Y. 2002) (holding that the named
23 plaintiff, who purchased only two of the more than 60 products at issue, did not
24 satisfy the Rule 23(a)(3) typicality requirement); *Kaczmarek v. Int'l Bus. Machs.
25 Corp.*, 186 F.R.D. 307 (S.D.N.Y. 1999) (finding that named plaintiffs failed to
26 satisfy the Rule 23(a)(3) typicality requirement where none of the plaintiffs had
27 purchased one of the products at issue in the litigation); *Guido*, 2012 WL 2458118
28 at *1 (California and New York class representatives' claims atypical from those

1  of other class members because they were exposed to different product labels than
2  other members of the class); *Red v. Kraft Foods, Inc.*, 2011 WL 4599833 (C.D.
3  Cal. Sept. 29, 2011) (motion for class certification denied "[b]ecause there are
4  significant questions as to the overbreadth of the proposed class, whether it is
5  ascertainable, whether common issue (sic) of fact predominate, whether Plaintiffs
6  are typical of the purported class, and whether California law applies to the claims
7  of nonresidents").

8        The court's analysis in *Wiener v. Dannon Co.*, 255 F.R.D. 658 (C.D. Cal.
9  2009) is instructive. In *Wiener*, the named plaintiff had purchased Dannon's
10 Activia product, but had never purchased the other two products at issue: Activia
11 Light and DanActive. *Id.* at 663. Activia and DanActive contained different
12 probiotics and therefore Dannon advertised the products as having different health
13 benefits. Dannon argued that Wiener's claims were not typical of the DanActive
14 consumers because the products were advertised separately and involve different
15 health benefits that were supported by different studies. *Id.* at 665. Wiener argued
16 that she satisfied the typicality requirement because her legal theories were
17 identical to those advanced on behalf of all potential class members, and Dannon's
18 advertising, that the products have clinically proven benefits, was identical for both
19 products. *Id.* Rejecting Wiener's argument, the Court stated, a "court must ensure
20 that the named plaintiffs have incentives that align with those of absent class
21 members so as to assure that the absentees' interests will be fairly represented" and
22 that the absentees' claims will be adequately pursued. *Id.* (quoting *In re Graphics*
23 *Processing Units Antitrust Litig.*, 253 F.R.D. 478, 489–90 (N.D. Cal. 2008)
24 (holding that Rule 23(a)(3) typicality requirement was not satisfied where "the
25 representative plaintiffs simply do not have the appropriate incentive to establish
26 … violations with respect to all of the absent class members," as evidence needed
27 to prove that defendants conspired to fix prices of products that named plaintiffs
28 had purchased would not prove that defendants conspired to fix prices of products

16

that unnamed class members had purchased). Thus, the Court held that because Wiener had only purchased Activia and had never purchased DanActive, the claims of the unnamed plaintiffs who purchased DanActive were not "fairly encompassed by [Wiener's] claims." *Id.* at 666.

Here, Plaintiff's claims are not typical of purchasers of Enfamil A.R.®, Enfamil Premium Newborn, and Enfagrow® Older Toddler Vanilla Milk Drink. Plaintiff spent no money on these products and has no personal stake in the success of claims of purchasers of these products. These products, moreover, were intended for different consumers, with different needs: newborns, infants who spit up frequently, and older toddlers who are no longer on infant formula or breast feeding. The product labels said different things about prebiotics, and also said different things about other product features potentially relevant to consumer product purchase decisions.

For example, the motivations for a consumer to purchase Enfamil A.R. (for infants with frequent spit up) are unique among the products: a purchaser of Enfamil A.R. would have no reason to use the product unless her baby had experienced frequent spit up. A purchaser of Enfamil Premium Newborn would most likely be a person who elected not to breast feed and is looking for a product that provides complete nutrition. A purchaser of a toddler beverage would be looking for a product to enhance the nutritional intake of a child also consuming solid food.

Nothing in the FAC suggests that Ms. Routé's purchase motivations aligned with those of purchasers of these other products, or that what might be "material" for her would also have been material for others. She therefore cannot be typical of such persons, and her claims lack commonality with theirs.

17

## CONCLUSION

For the foregoing reasons, Mead Johnson & Company, LLC respectfully requests that this Honorable Court strike the allegations of Plaintiff's First Amended Complaint as set forth in the Motion.

DATED:  December 10, 2012    **SEDGWICK LLP**

By: /s/ *Anthony J. Anscombe*
ANTHONY J. ANSCOMBE
One North Wacker Drive, Suite 4200
Chicago, IL  60606-2841
Telephone: (312) 641.9050
Facsimile: (312) 641.9530
anthony.anscombe@sedgwicklaw.com

/s/ *Karen Woodward*
KAREN WOODWARD
801 South Figueroa Street, Suite 1900
Los Angeles, CA 90017
Telephone:  (213) 426.6900
Facsimile:  (213) 426.6921
karen.woodward@sedgwicklaw.com

*Attorneys for Defendant Mead Johnson & Company, LLC*

CH/427401v1